UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SYLVIA BARGE,

                                    CASE NO.:   4:12-CV-426-WS/CAS

    Plaintiff,

v.

FLORIDA COMMISSION ON HUMAN RELATIONS
and LARRY KRANERT, Individually,

    Defendant.
_____/



| | |
|---|---|
| DEPOSITION OF: | LAWRENCE KRANERT, ESQUIRE |
| TAKEN AT THE INSTANCE OF: | The Plaintiff |
| DATE: | Tuesday, May 28, 2013 |
| TIME: | Commenced at 9:13 a.m.<br>Concluded at 11:52 a.m. |
| LOCATION: | 2894 Remington Green Lane<br>Tallahassee, FL 32308 |
| REPORTED BY: | MARYKAY KLINE<br>marykaykline@yahoo.com<br>COURT REPORTER |

ACCURATE STENOTYPE REPORTERS, INC.
2894-A Remington Green Lane
Tallahassee, Florida 32308
850.878.2221/asreporters@nettally.com

APPEARANCES:

    REPRESENTING PLAINTIFF:

        MARIE A. MATTOX, ESQUIRE
        marie@mattoxlaw.com
        ERIKA E. GOODMAN, ESQUIRE
        erika@erikagoodmanlaw.com
        Marie A. Mattox, P.A.
        310 East Bradford Road
        Tallahassee, Florida 32303
        850.383.4800

    REPRESENTING DEFENDANT FLORIDA COMMISSION:

        LISA A. BARCLAY, ESQUIRE
        lbarclay@sniffenlaw.com
        LINDSEY L. DUNN, ESQUIRE
        ldunn@sniffenlaw.com
        Sniffen & Spellman, P.A.
        123 North Monroe Street
        Tallahassee, Florida 32301
        850.205.1996

        AND

        CHEYENNE M. COSTILLA, ESQUIRE
        cheyanne.costilla@fchr.myflorida.com
        Florida Commission on Human Relations
        2009 Appalachee Parkway, Suite 100
        Tallahassee, Florida 32301
        850.488.7082 1006

    REPRESENTING DEFENDANT LAWRENCE KRANERT, ESQ.:

        JOHN S. DERR, ESQUIRE
        Jderr@qpwblaw.com
        Quintairos, Prieto, Wood & Boyer, P.A.
        215 South Monroe Street, Suite 600
        Tallahassee, Florida 32301
        850.412.1042

    ALSO PRESENT:
    Sylvia Barge
    Linda Kranert

```
                         I N D E X
WITNESS                                                    PAGE

  Lawrence Kranert, Esquire

    Direct Examination by Ms. Mattox                          5

    Cross-Examination by Ms. Barclay                         101

    Redirect Examination by Ms. Mattox                       110

                         EXHIBITS

               (Exhibits are attached hereto)
                                                           PAGE

    24        Confidential Memo                              18

    25        E-mail                                         24

    26        Cover Letter                                   23

    27        FCHR 22H Deferral                              62

    28        Organizational Chart & Development             63

    29        Employee Evaluation & Development              65

    30        E-mail                                         66

    31        Intake Unit's Inventory Report                 67

    32        E-mail                                         70

    33        Handwritten Note                               68

    34        Response                                       70

    35        E-mail                                         70

    36        E-mail Exchange                                76

    37        Memo                                           78

    38        Transcript                                     79

    39        E-mail                                         83
```

|    | Exhibit | Description | Page |
|----|---------|-------------|------|
| 1  | 40 | Memo | 84 |
| 2  | 41 | E-mail | 87 |
| 3  | 42 | Memo | 85 |
| 4  | 43 | Termination Letter | 90 |
| 5  | 44 | E-mail | 93 |
| 6  | 45 | Termination Letter | 94 |
| 7  | 46 | Report to RFP | 97 |
| 8  | 47 | Report to RFP | 97 |
| 9  | 48 | 212 Forms | 112 |

21   PAGE
22   CERTIFICATE OF OATH   123
23   CERTIFICATE OF REPORTER   124
24   ERRATA SHEET   125
25   LETTER TO READ/SIGN TRANSCRIPT   126

```
 1        Q.    Okay.
 2              MS. MATTOX:  I want to show you what I've marked
 3        as Exhibit 24 (indicating).
 4              (Exhibit 24 marked for identification.)
 5              MS. MATTOX:  And ask you --
 6              MS. BARCLAY:  May I see it before you ask
 7        questions, please.
 8              MS. MATTOX:  I'll give you the BATES stamp
 9        number for the record, too.  BATES stamp 6877.
10              MS. BARCLAY:  Mr. Derr (indicating).
11              MR. DERR:  Thank you.
12   BY MS. MATTOX:
13        Q.    Okay.  Are you familiar with that document?
14        A.    Never seen it before.
15        Q.    Okay.  If you could read, if you don't mind, the
16   -- were you interviewed, by the way, by Jamilla Moran about
17   complaints?
18        A.    Not to my recollection.  No, ma'am.
19        Q.    All right.  Well, I'd like for you to read, if
20   you could, what appears to be interview notes of you that
21   begin on BATES stamp page 6883, Lawrence Kranert, General
22   Counsel, November 4, 2010.
23              And by the way, if you could look on the front
24   page of that document first, and the date is redacted; can
25   you think of any reason why that date would be redacted on
```

```
 1        A.    Florida is the State FEPA.
 2        Q.    Right.
 3        A.    There are additional other FEPAs that have
 4   territorial geographic limitations.
 5        Q.    I understand, but I'm talking about a case that
 6   the EEOC has received, let's say, from Tallahassee and a
 7   charge is filed from Tallahassee.  And the box on the
 8   charge, the federal charge, is checked FEPA, and it says on
 9   the next line down, Florida Commission on Human Relations,
10   and the EEOC decides that they are going to investigate
11   that, okay?  What happens?
12        A.    We're supposed to send the 212 back, either
13   acknowledging that they will investigate the case, or
14   saying that, no, the Commission will investigate the case.
15        Q.    Okay.  So the Commission can take it away from
16   the EEOC?
17        A.    Pretty much, by agreement that we discussed with
18   the EEOC on many occasions.
19        Q.    Okay.  So is that anywhere in writing, that even
20   though the EEOC's made a decision that they're going to
21   usurp their authority, the EEOC's authority, to
22   investigate?
23              MS. BARCLAY:  Form.
24              MR. DERR:  Object to form.
25              THE WITNESS:  There were a significant number of
```

```
 1   receipt of that?
 2           MR. DERR:  Object to form.
 3           MS. BARCLAY:  Form.
 4           THE WITNESS:  Far more than perfunctory.
 5   BY MS. MATTOX:
 6       Q.   Okay.  Well, it's acknowledging -- why would it
 7   be more than perfunctory if the Florida Commission is not
 8   getting any money from the EEOC for investigating that
 9   charge that's reflected on the 212 form?
10           MR. DERR:  Object to form.
11           MS. BARCLAY:  Join.
12   BY MS. MATTOX:
13       Q.   Why would it be any more than perfunctory?
14       A.   It was an absolute integral part of the system
15   that those 212 forms be read and reviewed, that the cases
16   be looked at into CMS to make sure that -- especially in
17   dually-filed cases -- that the Commission has not commenced
18   an investigation, which would be another reason why we
19   would object to EEOC investigating the case.
20       Q.   How would preparing the 212 form ensure that the
21   Florida Commission is not investigating it?
22           MR. DERR:  Object to the form.
23           THE WITNESS:  You have to repeat the question.
24   BY MS. MATTOX:
25       Q.   Okay.  You said a minute ago that the
```

```
 1   CMS?  Well, did you receive monthly reports, weekly or
 2   monthly reports, even when Ms. Barge was the -- the
 3   supervisor over intake?
 4           MR. DERR:  Object to the form.
 5           MS. BARCLAY:  Join.
 6   BY MS. MATTOX:
 7      Q.   From CMS?  Did you receive monthly intake
 8   reports from CMS about the intakes?
 9      A.   No.
10      Q.   Okay.  Do you know that at some point in time,
11   though, you took over intakes?  I think that was on August
12   11, 2011 or August 12, 2011, right?
13      A.   The date means nothing to me.
14      Q.   Okay.
15      A.   At the time Ms. Barge left I took over the
16   function.
17      Q.   Okay, and you didn't take over the function of
18   intakes before Ms. Barge left?
19      A.   Not really, to my recollection.  No.
20      Q.   Okay.  Well, did you begin getting reports,
21   then, through CMS about intakes, the closure of documents
22   and which ones would be covered under the EEOC contract and
23   which would not?
24      A.   And --
25      Q.   And whether you were making your goals?
```

1  that time?
2      A.   Yes, ma'am.
3      Q.   Okay, and why was that?
4      A.   She asked for time off.  I gave her time off.
5      Q.   Okay.  Why was it you that was approving her
6  time off?  What position were you in?
7      A.   I was general counsel.  I was technically over
8  the investigation unit as an investigative function, not
9  administratively.
10     Q.   Okay.
11     A.   She asked for the time off from me.  I granted
12 it.
13          (Exhibit 6 marked for identification.)
14 BY MS. MATTOX:
15     Q.   Okay.  Exhibit 6 (indicating), do you recall
16 seeing that document?  Let me ask a different question.
17          Do you recall on August 24th that you received
18 a phone call from Tim Carlisle from DMS advising you that
19 Ms. Barge had filed a complaint against you and the
20 Commission with the governor's office?
21          MS. BARCLAY:  Form.
22          MR. DERR:  Join.
23 BY MS. MATTOX:
24     Q.   Go ahead.
25     A.   No.

```
 1     Q.   Are you denying you received a phone call from
 2  Tim Carlisle?
 3     A.   I'm answering your question do I recall.  The
 4  answer's no.
 5     Q.   Okay.  Then my question is, do you deny -- have
 6  you ever received a phone call from Tim Carlisle?
 7     A.   I have no recollection of receiving a call with
 8  any specificity from Tim Carlisle.
 9     Q.   How about from the governor's office, or DMS,
10  between the 23rd of August and the 29th of August?  Do you
11  recall receiving any phone call from anybody or from
12  Michelle Wilson advise -- or any communication with anyone,
13  not a phone call, any communication with anyone --
14          MR. DERR:  Object to form.
15  BY MS. MATTOX:
16     Q.   -- advising you that Sylvia Barge had filed a
17  complaint against you with the office of the governor?
18     A.   I don't recall.
19          MR. DERR:  Object to form.
20          MS. BARCLAY:  Form.
21  BY MS. MATTOX:
22     Q.   Okay.  By saying you don't recall, does that
23  mean you're denying receiving that call or communication,
24  or you don't recall?
25     A.   I don't remember any such event.
```

```
 1        Q.    Okay.  So by saying that you don't remember it,
 2   are you denying it?  Are you saying I simply don't recall
 3   it?
 4             MS. BARCLAY:  Form.  Asked and answered.
 5             MR. DERR:  Join.
 6             THE WITNESS:  I do not recall any such event.
 7   BY MS. MATTOX:
 8        Q.    Okay.
 9        A.    Ever -- ever happening.
10        Q.    Okay.  Did you prepare the evaluation on
11   Ms. Barge for the 2010-'11 year?
12        A.    I'm not quite sure.
13        Q.    Did you ever prepare any evaluations on
14   Ms. Barge?
15        A.    I don't believe so.
16        Q.    Okay, and do you know when her yearly evaluation
17   would have been due in 2011?
18        A.    No, ma'am, other than her anniversary date.  No,
19   ma'am.
20        Q.    Okay.
21             (Exhibit 43 marked for identification.)
22   BY MS. MATTOX:
23        Q.    Exhibit 43 (indicating).  You were the person
24   who made the decision to fire Ms. Barge?
25        A.    No, ma'am.
```

**CERTIFICATE OF OATH**

STATE OF FLORIDA      )
COUNTY OF LEON        )


      I, the undersigned authority, certify that said designated witness personally appeared before me and was duly sworn.

      LAWRENCE KRANERT my hand and official seal this __28th__ day of May, 2013.

MARYKAY KLINE
Marykaykline@yahoo.com
NOTARY PUBLIC
850-878-2221

**CERTIFICATE OF REPORTER**

STATE OF FLORIDA    )
COUNTY OF LEON      )

I, MARYKAY KLINE, Notary Public, do hereby certify that the foregoing proceedings were taken before me at the time and place therein designated; that a review of the transcript was requested, and that the foregoing pages numbered 1 through 122 are a true and correct record of the aforesaid proceedings.

I further certify that I am not a relative, employee, attorney or counsel of any parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

DATED this __28th__ day of May, 2013.

MARYKAY KLINE
marykaykline@yahoo.com
850-878-2221

ACCURATE STENOTYPE REPORTERS, INC.